UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.  9:14-CV-80900-ROSENBERG/BRANNON

CREATIVE AMERICAN EDUCATION, LLC,
a Colorado Limited Liability Company,

      Plaintiff,

v.

THE LEARNING EXPERIENCE SYSTEMS,
LLC, a Delaware Limited Liability Company,
ANTHONY KORDA, an individual & KORDA,
ZITT & ASSOCIATES,

      Defendants.
_____/

THE LEARNING EXPERIENCE SYSTEMS, LLC,
a Delaware Limited Liability Company and
TLE AT PARKER, LLC, a Delaware Limited Liability
Company, & TLE AT AURORA, LLC, a Delaware
Limited Liability Company,

      Counter-plaintiffs,

v.

CREATIVE AMERICAN EDUCATION, LLC, a
Colorado Limited Liability Company,
BERNARD LOGANATHAN, an individual, &
KATIJAH BEEVE SHAIK ALUDEEN-
LOGANATHAN a/k/a KATIJAH SHAIK ALUDEEN,
an individual,

      Counter-defendants,
_____/

BERNARD LOGANATHAN, an individual, &
KATIJAH BEEVE BINTE SHAIK ALAUDEEN,
an individual,

      Counterclaim plaintiffs,

v.

THE LEARNING EXPERIENCE SYSTEMS, LLC,
a Delaware Limited Liability Company, ANTHONY
KORDA D/B/A KORDA, ZITT & ASSOCIATES, &
THE LAW OFFICES OF ANTHONY KORDA, LLC,
D/B/A KORDA, ZITT & ASSOCIATES, a Florida
Limited Liability Company,

      Counterclaim defendants.
_____/

**ORDER DENYING COUNTER-PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT AS TO COUNTERCLAIMS**

This matter is before the Court on Counter-plaintiffs' (The Learning Experience Systems, LLC, TLE at Parker LLC, and TLE at Aurora, LLC) Motion for Summary Judgement as to Counterclaims [DE 100]. The Motion has been fully briefed by both sides and the Court heard oral argument on the Motion on May 5, 2015. The Court has reviewed the documents in the case file and is fully advised in the premises. For the reasons set forth below, the Motion is denied as to each of Counter-plaintiffs' claims which are comprised of: breach of the Franchise Agreements (Count I and Count IV), breach of personal guarantees (Count II and Count VI), breach of the Lease Agreement for the space occupied by the franchise businesses (Count III), breach of the Management Agreement (Count VII), and Counter-plaintiffs' request for declaratory relief (Count VIII).

## I.   BACKGROUND

This case is about the acquisition of a childcare franchise. Plaintiff, Creative American Education, LLC ("CAE"), is a business entity created by foreign investors (Mr. Loganathan and Ms. Alaudeen, collectively, the "Loganathans"), citizens of Singapore, who sought to obtain EB-5 visas that would allow them to immigrate to the United States. Acquisition of this visa requires, *inter alia*, investment in a business in the United States, active participation in the business by the investor, and the creation of at least ten full-time jobs for American citizens. The Loganathans therefore investigated the possibility of starting a childcare business in the United States through a franchise, The Learning Experience. The Learning Experience franchise ("TLE") is owned by Defendant Learning Systems Experience, LLC.

2

The Loganathans executed several agreements with TLE (subsequently assigned to CAE), including a Franchise Agreement, for the stated purpose of owning two separate childcare franchises in Colorado. Although it was the Loganathans' intent to actively participate in the franchise (such participation was required for an EB-5 visa), the Loganathans were unable to arrive in the United States prior to the completion of the build-outs for their franchise locations. The Loganathans[1] and CAE therefore executed a Management Agreement with TLE that authorized TLE to manage the Loganathans' franchises for a certain period of time. The Management Agreement contemplated that the Loganathans eventually would co-manage with TLE and, after additional time, the Loganathans exclusively would manage the businesses and TLE would no longer be involved with any management responsibilities.

The Loganathans eventually obtained visas, immigrated to the United States, received training from TLE, and assumed certain managerial responsibilities for their franchises (although the parties dispute the level of management responsibilities that the Loganathans' assumed). A plethora of complications with the operation of the franchises occurred during this period of time. After a series of staffing problems and warnings from state inspectors, Mr. Loganthan sent an e-mail to TLE that read in part as follows:

> So far have turned away two parents. One was a pregnant mum with two kids. She cried. I feel we are doing an injustice to the parents by keeping the center open. I propose closing the center tomorrow. Considering we don't have a director either. N are in State violations.
>
> Plus pulling staffs from Aurora is putting Aurora at risk as well. Considering that Aurora is also on State's probation list.

In response, TLE sent a letter to the Loganathans that read as follows:

---

[1] Ms. Alaudeen-Loganathan signed the Management Agreement in both her individual capacity and her capacity as the managing member of CAE.

3

## NOTICE

May 1, 2014

*VIA EMAIL*

Bernard Loganathan & Katijah Shaik-Loganathan
Creative American Education, LLC
10015 Twenty Mile Road
Parker, Colorado 80134

    Re:    Franchise # 231 – TLE Parker, Colorado & Aurora, Colorado

Dear Bernard & Katijah:

    This correspondence is being sent in response to your e-mail correspondence of today's date to Patrick Campolo, Tara Montenaro and Deborah O'Byrne, and your follow-up telephone conversation of this afternoon with Richard Weissman, regarding the TLE Centers in Parker and Aurora, Colorado.

    In your e-mail correspondence, you set forth your intention to close the Parker Center tomorrow, May 2, 2014. We advised you in no uncertain terms that such closure would be unacceptable, and would constitute a breach of your Franchise Documents with respect to the Parker Center. In light of your failure to present any reasonable alternatives to closure, and in the interests of protecting and ensuring the safety and well-being of the children and staff at the Centers, as well as preventing irreparable harm to the TLE brand and System, **Franchisor shall immediately assume operational management of both the Parker and Aurora Centers, effective May 2, 2014**. This letter shall serve to memorialize that fact, as well as your agreement to such course of action, as expressed in your telephone conversation of this afternoon with Richard Weissman.

    As you are aware, and pursuant to multiple prior conversations between yourselves and Franchisor's senior staff, I forwarded to you yesterday an Exclusive Center Management Agreement for your review and execution. As per your telephone conversation with Richard Weissman today, you will have one (1) week from the date of this Notice to review that Agreement with your counsel and respond to same.

    In order to minimize potential disruptions to ongoing Center activities and avoid potential staff and/or parent conflicts, we must respectfully insist that you not be physically

4

present at either Center until the Agreement is fully executed by all parties, and that you refrain from having your own children attend either Center during such time.

As you have pointed out in multiple e-mails and telephone conversations, during the short time period when the Centers have been under your management, both Centers have had to contend with multiple licensing issues and violations. Accordingly, please note that Franchisor will also undertake a full review and investigation of all operations in both Centers, to determine how and why such issues and violations occurred, and to correct any outstanding deficiencies. Franchisor reserves all rights and remedies in connection therewith.

This Notice is sent without waiver of any rights available to us under the various Franchise Documents, at law, or in equity, all of which are hereby reserved in full.

Sincerely

Michael A. Shafir, Esq.
Vice President & General Counsel

After sending this letter, TLE assumed full managerial control of CAE's franchises on May 2, 2014. Although TLE subsequently sent several e-mails to the Loganathans requesting certain documentation and funds, the Loganathans declined to respond and instead initiated the instant suit.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material*

5

fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

### III.     ANALYSIS AND DISCUSSION

Counter-plaintiffs argue that they are entitled to summary judgment on each of the counts raised in their counterclaim: (1) CAE's breach of the Franchise Agreement,[2] (2) the Loganathans' breach of a personal guaranty, (3) CAE's breach of the Lease Agreement for the space occupied by the franchise businesses, (4) CAE's breach of the Management Agreement, and (5) Counter-plaintiffs' request for declaratory relief.  Counter-plaintiffs' arguments are each addressed in turn.

**1.     The Franchise Agreement**.

Counter-plaintiffs argue that CAE breached its Franchise Agreement.  The basis for Counter-plaintiffs' argument is best divided into three chronological categories: (A) CAE's alleged breach through its failure to maintain proper state licensing, failure to comply with state childcare regulations, and failure to maintain competent and trained employees (all of which occurred prior to TLE's assumption of managerial control on May 2, 2014), (B) CAE's alleged express intent to abandon one of its franchises (combined with an alleged danger to public health and safety), and (C) CAE's alleged failure to comply with provisions of the Franchise Agreement subsequent to TLE's assumption of managerial control on May 2, 2014.  This chronological breakdown reveals the crux of the dispute between the parties.  More specifically, this case presents the unusual circumstance of where a franchisor unilaterally manages a franchise for a franchisee, followed by a period of "co-management" between the franchisee and the franchisor.  Due to this unique arrangement, the parties dispute the

---

[2] For the sake of simplicity, the Court occasionally refers to multiple, essentially identical documents executed for both franchises in the singular tense.  By virtue of cross-default provisions, any default for one franchise is considered to be a default for all franchises and, as a result, the Court addresses Counter-plaintiffs' claims in the groups delineated above rather than analyzing the claims count-by-count.

7

origination of breaches of the Franchise Agreement. TLE argues that the origination of the breaches at issue were from CAE's actions during the period of time CAE co-managed with TLE which, as TLE characterizes, was a period when CAE had control over franchise operations. By contrast, CAE argues that the origination of the breaches at issue was actions that TLE undertook during its period of unilateral management that then carried over into the period of co-management. Finally, CAE characterizes the period of co-management as essentially being co-management in name only, with all important decisions still being made by TLE.

> A.   CAE's alleged breach prior to TLE's assumption of managerial control.

Counter-plaintiffs allege that CAE breached the Franchise Agreement through failure to maintain proper state licensing, failure to comply with state childcare regulations, and failure to maintain competent and trained employees. Facially, these allegations violate article 8 of the Franchise Agreement and these allegations are supported by evidence in the record. DE 98-1 at 4. More specifically, TLE has attached an affidavit by its general counsel, Michael Shafir, to its Motion that attests that as a result of CAE's actions, the franchises failed to maintain proper staff-to-child ratios, failed to conduct proper background checks on employees, and failed to maintain proper student records. *Id.*

CAE counters by arguing that these alleged breaches actually stem, not from CAE's actions, but from the actions of TLE. More specifically, CAE argues that these breaches can be traced to, and originate from, the period of time when TLE unilaterally managed the franchises (prior to the period when CAE co-managed with TLE). CAE's position is supported by evidence in the record. *See* DE 128 ¶¶ 41-44. For example, state inspectors documented

8

regulation violations during the time period TLE unilaterally managed the franchises. *Id.* Although significant staffing problems arose when TLE and CAE co-managed the franchises (which in turn caused regulatory compliance problems), according to CAE these staffing problems were directly attributable to the previous hiring decisions of TLE. *Id.*

Upon review of the record, the Court finds that the alleged breaches could have occurred as a result of CAE's actions, as TLE argues, or the breaches could have been caused by decisions TLE made during its initial management of the franchises, as CAE argues. The origination of the breaches is therefore a material fact, and the Court must construe all evidence in the record in the light most favorable to CAE as the non-moving party. Accordingly, because there is conflicting evidence as to which party is responsible for the activity that gave rise to the alleged breaches of the Franchise Agreement (primarily pertaining to the franchise's noncompliance with state regulations), summary judgment cannot be granted on this basis, and must be denied.

      B.     <u>CAE's alleged breach under section 11.2 of the Franchise Agreement.</u>

Counter-plaintiffs next argue that CAE breached section 11.2 of the Franchise Agreement by expressing intent to abandon a franchise. Counter-plaintiffs' position is based upon the e-mail by Mr. Loganthan which stated "I propose closing the center tomorrow" together with a phone call (the content of which is disputed) that preceded TLE's May 1, 2014 notice. Section 11.2(h) does not state that "closure" is a breach; this section instead states that CAE will breach the Franchise Agreement if CAE *ceases to operate*. Counter-plaintiffs equate, then, "I propose closing the center tomorrow" with CAE's cessation of operations. For

9

authority, Counter-plaintiffs cite to *Burger King Corp. v. Barnes*, No. 95-CV-1408, 1996 WL 529281 (S.D. Fla. Aug. 28, 1996).

In *Barnes*, a franchisee sent a letter to the franchisor that stated "[I] will be immediately closing [my] restaurant . . . and will be suspending performance of [all] obligations under the [franchise agreement]." *Id.* at *3. Soon thereafter, the franchisee in that case proceeded to convert his restaurant from a "Burger King" to a "Burger Inn". *Id.* Applying *Barnes* to the instant case, *Barnes* is easily distinguishable. While the evidence in *Barnes* clearly showed intent to abandon the franchise, the evidence in this case is far from clear. A finding of fact is necessary to determine whether CAE intended to abandon the franchise (a cessation of operations) in this case or whether, as CAE argues, CAE intended a short-term closure to remedy non-compliance with state regulations. A short-term closure does not clearly and unambiguously equate to a cessation of operations. However, even if a short-term closure *does* constitute a breach under the Franchise Agreement, CAE never actually closed the franchise. Unlike *Barnes*, the language in Mr. Loganthan's e-mail lacks sufficient clarity for the Court to declare as a matter of law that TLE had a right to pre-emptive action. In summary, it is the finding of the Court that only a trier of fact can determine whether CAE abandoned the franchise or otherwise ceased to operate under section 11.2(h) on or before May 2, 2014.

Counter-plaintiffs assert one other basis for a section 11.2 default. Counter-plaintiffs assert that all of the alleged breaches of CAE discussed above in subsection (A) amounted to a threat to public health and safety. While a "threat to the public health and safety" does constitute a breach of section 11.2(j) in the Franchise Agreement, the term is undefined in the Agreement and viewing all reasonable inferences in favor of CAE, the Court cannot conclude

10

as a matter of law that public health and safety was threatened by virtue of CAE's noncompliance with state regulations. Moreover, as discussed above, there is a dispute of material fact over whether the allegations that gave rise to the asserted threat to the public originated from TLE's actions or CAE's actions. Summary judgment therefore cannot be granted on this basis, and must be denied.

> C. CAE's alleged breaches subsequent to TLE's assumption of managerial control on May 2, 2014.

Counter-plaintiffs also allege CAE breached the Franchise Agreement by pointing to CAE's essential refusal to fund or maintain the franchise subsequent to TLE's assumption of managerial control on May 2, 2014. These allegations necessarily are based upon the premise that the Franchise Agreement was not terminated on May 2, 2014. There is evidence in the record to support this position. For example, it reasonably could be inferred that TLE did not terminate the Franchise Agreement, notwithstanding its assumption of managerial control, because TLE continued to request that CAE comply with the Franchise Agreement, TLE did not provide any express notice of termination, and the Loganathans allegedly consented to TLE's assumption of management.[3] *See* DE 98-1 at 5; 94-3 at 111-15.

CAE's position, however, is that the Franchise Agreement was terminated by TLE on May 2, 2014.[4] CAE's position is supported by evidence in the record. For example, it reasonably could be inferred that TLE terminated the Franchise Agreement when (i) the chief executive officer of TLE allegedly stated that he was prepared "to go to war," (ii) following this

---

[3] The May 1, 2014 notice stated that CAE "agreed" with TLE's assumption of managerial control. CAE denies any agreement was reached. *See* DE 93-2 at 135-36.

[4] CAE's position is that TLE terminated the Franchise Agreement by virtue of one of the following: either TLE terminated the agreement pursuant to section 11.2 or TLE terminated the agreement by virtue of an improper seizure.

11

statement, TLE allegedly assumed complete managerial control without CAE's consent, and (iii) TLE banned the Loganathans' presence on franchise premises. *See* DE 93-2 at 131-36. Because the Court must construe all evidence in the light most favorable to CAE as the non-moving party and because the Court may not weigh evidence on a motion for summary judgment, the Court concludes that issues of material fact remain as to whether the Franchise Agreement was terminated on May 2, 2014. Because the Court cannot conclude whether the Franchise Agreement was terminated, the Court cannot conclude whether CAE breached the Franchise Agreement for events that occurred subsequent to May 2, 2014. Summary judgment therefore cannot be granted on this basis, and must be denied.[5]

### 2. The Personal Guarantees.

Although Counter-plaintiffs have alleged the Loganathans breached their obligations under certain personal guarantees for events subsequent to May 2, 2014, CAE's position is that the Loganathans' obligations under the guarantees ceased when the Franchise Agreement was terminated on May 2, 2014 by virtue of TLE's assumption of full managerial control. While Counter-plaintiffs' position is that this assumption of managerial control did not terminate the Franchise Agreement, as discussed above, the Court must consider the evidence in the record in the light most favorable to CAE and, as a result, the Court cannot conclude as a matter of law whether the Franchise Agreement and other agreements were terminated. Furthermore, to the extent Counter-plaintiffs allege breaches of the personal guarantees for events prior to May 2, 2014, for all the reasons set forth above issues of material fact remain as to the source of the

---

[5] For the same reason, the Court cannot grant summary judgment on Counter-plaintiffs' claim that the Franchise Agreement was breached by virtue of the cross-default provision in section 11.2.3.

alleged breaches. Summary judgment therefore cannot be granted on this basis, and must be denied.

### 3. The Lease Agreement and Related Assignments.

Although Counter-plaintiffs have alleged CAE breached its obligations under the Lease Agreement and related assignments for events subsequent to May 2, 2014, CAE's position is that its obligations under the lease were terminated by virtue of TLE's assumption of full managerial control on May 2, 2014. While Counter-plaintiffs' position is that this assumption of managerial control did not terminate the lease agreement or the Franchise Agreement in this case, as discussed above, the Court must consider the evidence in the record in the light most favorable to CAE and, as a result, the Court cannot conclude whether the aforementioned agreements were terminated. Furthermore, to the extent Counter-plaintiffs allege breaches for events that occurred prior to May 2, 2014, for all the reasons set forth above issues of material fact remain as to the source of the alleged breaches. Summary judgment therefore cannot be granted on this basis, and must be denied.

### 4. The Management Agreement.

Although Counter-plaintiffs have alleged CAE breached its obligations under the Management Agreement for events subsequent to May 2, 2014, CAE's position is that its obligations under the Management Agreement were terminated by virtue of TLE's assumption of full managerial control on May 2, 2014. While Counter-plaintiffs' position is that this assumption of managerial control did not terminate the Management Agreement or the Franchise Agreement in this case, as discussed above, the Court must consider the evidence in the record in the light most favorable to CAE and, as a result, the Court cannot conclude

whether the Management Agreement and related agreements were terminated. Furthermore, to the extent Counter-plaintiffs allege breaches for events that occurred prior to May 2, 2014 (primarily pertaining to the franchise's failure to comply with state regulations), for all the reasons set forth above issues of material fact remain as to the source of the alleged breaches. Summary judgment therefore cannot be granted on this basis, and must be denied.

### 5. Counter-plaintiffs' Request for Declaratory Relief.

It is difficult for the Court to discern the precise contours of Counter-plaintiffs' request for declaratory relief because, to an extent, Counter-plaintiffs' request contradicts Counter-plaintiffs' theory of the case. Counter-plaintiffs appear to seek a declaration that the Franchise Agreement was terminated on or before the date TLE assumed complete managerial control—May 2, 2014. As discussed at length above, however, many of Counter-plaintiffs' allegations in this case concern CAE's alleged breaches of the Franchise Agreement and related agreements *after* May 2, 2014. Any declaration that the Franchise Agreement was terminated would therefore render many of Counter-plaintiffs' allegations irrelevant. In any event, the Court cannot, without findings of fact, declare that the Franchise Agreement was terminated on May 2, 2014 for all of the reasons set forth above. Conversely, if is Counter-plaintiffs' intention to seek a declaration that the Franchise Agreement was terminated on some other date, this is not clearly stated or argued and, in any event, the Court can make no such declaration on summary judgment for all of the reasons previously stated.

### IV. CONCLUSION AND RULING

In summary, questions of material fact remain as to whether CAE breached any agreement prior to TLE's assumption of complete managerial control on May 2, 2014.

14

Findings of fact are also necessary to determine whether any agreement was terminated on May 2, 2014 and, without such findings, the Court cannot grant summary judgment on any count premised upon alleged breaches subsequent to May 2, 2014.[6] For the foregoing reasons, Counter-plaintiffs' Motion for Summary Judgement as to Counterclaims [DE 100] is **DENIED**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 7th day of May, 2015.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record

---

[6] Because the Court finds that issues of material fact preclude summary judgment, the Court need not consider whether CAE's affirmative defenses preclude summary judgment.